[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for slander. The defendant is an attorney. Commencing in January 1987 the defendant became acquainted with the plaintiff. The plaintiff, a resident of Connecticut, and the defendant agreed that the defendant would handle a Social Security Disability claim for the plaintiff. The defendant was recommended to the plaintiff by one Jerry Le May for whom the defendant was handling another matter.
The plaintiff claims that on July 3, 1987 the defendant had a conversation with Le May. Le May told the defendant that, to quote the complaint, ". . . Le May falsely told Fain that the plaintiff Mulka was a threat and posed a physical threat to his former wife, Lovell." The plaintiff claims that thereafter the defendant called Attorney Pentlarge, a Massachusetts attorney who represented his former wife and wrongfully slandered the CT Page 3982 plaintiff by "repeating such slanderous statements." He claims that Pentlarge contacted Lovell who immediately called the police and the court.
On June 9, 1987 he received a summons from the court in Massachusetts and was charged with threatening his former wife. He claims that he suffered a heart attack as a result of being served with the summons and was confined to the Rockville General Hospital for four days. He seeks damages, interest, punitive damages, attorneys' fees and costs of medical expenses.
The court finds the following facts. On June 29, 1987 Le May called the defendant and told the defendant that the plaintiff told Le May that he, the plaintiff, wanted to kill his ex-wife. That this desire for her death was in connection with a house, and that his anger was related to the house.
On June 29, 1987 the defendant called the plaintiff about the assertion which Le May had made, the statement of Le May concerning the alleged desire of the plaintiff concerning his former wife, Lovell. The plaintiff denied making that statement, and said that Le May's claiming that he had made that statement was a lie.
Three days later, July 2, 1987, Le May came to the defendant's office. In addition to repeating that the plaintiff stated that he wanted to kill his ex-wife, Le May stated that he had been driven by the defendant to Horseshoe Circle in Ware (Massachusetts) where his ex-wife lived, to "case her" as part of this intent.
The defendant considered this to be much more significant than the mere relating of the alleged assertion which was related to him three days previous. The plaintiff at trial did not address the matter of the alleged trip to Ware, Massachusetts either in direct examination, or when he testified in rebuttal at the end of the defendant's case.
The defendant then phoned Attorney Pentlarge's office in Massachusetts. The attorney was not in. The defendant related what he had been told to attorney Pentlarge's secretary, to relay the fact that he, the CT Page 3983 defendant, had been told about the alleged conduct of the plaintiff by a third person, to wit that the plaintiff stated that he intended to kill her or to harm her. Or that he wanted to kill her. He also related that the source of the information had stated that he, the source, had been driven to the ex-wife's house or street by the plaintiff.
The defendant had reason for concern as a citizen. The defendant had previously been informed by the plaintiff of an incident whereby, while incarcerated, he had dumped a bucket of urine on a group of other inmates to "show that he was in charge." At some time in the past the plaintiff had asked the defendant to speak to Attorney Pentlarge about an IRS dispute concerning deductions for the children. The plaintiff was very angry about that situation. In the course of the discussion, Attorney Pentlarge told the defendant that "Jane Lovell was terrified of him with some cause . . ."
Although it does not appear from the evidence whether or not the defendant knew of past incidents of aggressive behavior of the plaintiff directed to his former wife Lovell, the evidence at trial reveals that in 1981 the defendant served thirty days for violating a protective order. Two orders had been issued in Massachusetts, one on December 16, 1980 and one on March 30, 1981. The plaintiff testified that his incarceration was the fault of the attorneys; his and the adverse attorney. The court considers that testimony, and the previous orders, only on the question of credibility of the plaintiff. And further that the previously related concern of Lovell, expressed by Attorney Pentlarge, mitigates against any proposition that the defendant should have out of hand dismissed his prior information concerning Lovell's fear as being inherently frivolous or fanciful. The prior knowledge of the fear of Lovell could properly be taken into consideration by the defendant in determining whether he should relay the information to Attorney Pentlarge for evaluation as to whether protective action by Ms. Lovell was appropriate or necessary.
The affidavit by Lovell, submitted to the Massachusetts court, relates Attorney Pentlarge's report CT Page 3984 to her of the phone call of the defendant to Attorney Pentlarge. The defendant did not vouch for the truth or veracity of the representations made to him. The description of the message of the defendant to Attorney Pentlarge as described by Lovell in the affidavit states: "He stated that a close anonymous friend reported to him that Brian, my ex-husband, was out to do me bodily harm so that he could obtain our house . . ." (Plaintiff's Exhibit B.)
The plaintiff testified that after he received the restraining order and the notice for a hearing set for July 10, 1987, from the Massachusetts court he commenced to have cardiac symptoms. He went that day to the emergency room at Rockville Hospital. The hospital record, Exhibit C, contains no reference in the history given as to the restraining order or the hearing notice, or to any aspect of the dispute. No part of the hospital record refers to that subject, nor is there any diagnosis relating to that incident. The plaintiff produced no medical evidence attempting to relate the hospital treatment or symptoms to these events, though he, in answer to interrogatories of July 30, 1990 identified a physician at Rockville Hospital as an expert which he expected to call as a witness at trial for those purposes.
The plaintiff originally alleged that the defendant breached a legal duty of loyalty to the plaintiff as his legal counsel. This was omitted from the substitute complaint, and properly so, for there was no violation of any attorney client privilege in this matter. Rule 1.6(b) of the Rules of Professional Conduct requires revealing of information necessary to prevent a client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm.
The court concludes as follows. First that the plaintiff did in fact express the words which would be interpreted in any rational sense as being a threat to cause bodily harm to Lovell. The question is not whether he actually intended to kill Lovell, but rather did he express words which would carry the natural and rational connotation of a threat to cause bodily harm. The defendant has proven his defense of the truth that the CT Page 3985 threat had been uttered.
Second, if the court had found that the plaintiff did not so threaten, the law is clear that the defendant would yet be covered by a privilege to report the information so conveyed to him. The plaintiff properly so concedes in his brief. The law is clear on this subject.
 "The law implies malice from a libelous publication, except in certain cases of privilege, one of which is when `the author and publisher of the alleged slander acted in the bona fide discharge of a public or private duty, . . .'"
Flanagan v. McLane, 87 Conn. 220, 222 (1913).
 "As the defamatory statements were made on an occasion of privilege, the burden rests upon the plaintiff to prove actual malice or malice in fact in order to recover."
Ely v. Mason, 97 Conn. 38, 44 (1921).
For the privilege to be properly invoked
 "It was enough if he honestly, and in good faith, at the time when he made them believed them to be true. This required nothing more than that there were grounds for such belief which then seemed to him reasonable and sufficient . . ."
Barry v. McCollom, 81 Conn. 294, 297 (1908).
See also Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 618 (1955).
It is difficult to envision a circumstance more compelling than those whereby domestic violence is threatened. To do nothing under these circumstances — to not refer the report of the professed desire of the plaintiff, and the "casing" of Lovell's residence, to the Massachusetts attorney for evaluation and possible CT Page 3986 protective action — would be unjustifiable indifference.
There can be no reasonable question that one has a duty, private and public, to assist in the safeguarding of citizens against the abhorrent consequences of threatened domestic violence. The defendant had good cause to act, particularly bearing in mind his own knowledge of the plaintiff's past conduct indicating a propensity to react with anger, and the particularly alarming prospect of the plaintiff having driven to Lovell's neighborhood in Ware, Massachusetts, to "case her."
There is absolutely no evidence of malice in this case.
Lastly, even if the court had determined that the conduct of the defendant was actionable, yet there is no evidence whatsoever to relate the serving of the Massachusetts order upon the plaintiff to the plaintiff's medical problems, or his confinement in the hospital. Without such medical evidence the court could not conclude a cause and effect between the two. Further, the fact that Ms. Lovell did not press the Massachusetts court for further orders beyond the ex-parte order, and that the plaintiff therefore did not have to appear for a hearing for further orders in that matter, does not affect or alter the court's conclusions in this matter.
For the reasons set forth herein, the court having found for the defendant, enters judgment for the defendant Gordon Y. Fain.
Sullivan, J.